IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ESPERANZA BONILLA-OLMEDO,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

CIVIL NO. 08-1842 (FAB/CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Esperanza Bonilla-Olmedo (hereafter "plaintiff Bonilla-Olmedo") filed this federal claim as the widow of William Charles Merriweather (hereafter "Mr. Merriweather"), who was a civilian employee with the Department of Morale and Welfare in Fort Buchanan, Puerto Rico.  It is therein claimed that as of July of 2005 and up to the time of his demise, Mr. Merriweather was the victim of harassment by his superiors who undermined the deceased's health and ultimately resulted in his death.  The supervising personnel at the Army base had knowledge of the situation as of November 29, 2006, and failed to take any corrective action.  This situation is depicted in to the sworn statements and grievances filed.

Plaintiff Bonilla-Olmedo and two of the grandchildren state they sought to continue their status as residents of Fort Buchanan after Mr. Merriweather's death and were confronted with unreasonable obstacles not previously experimented by other widows at the Army installation.  When attempting to inquire about the grievances initiated by the deceased, plaintiff Bonilla-Olmedo was treated in a hostile fashion and was denied access to the record.  Subsequently, they were all removed from the Army installation and denied privileges and access without justification.  These actions were claimed to have been

conducted outside the employer's immunity at the workplace and the legitimate activities of employment.

Plaintiff Bonilla-Olmedo claims the work harassment by the employer and the named individuals in the body of the complaint fall under Article II of the Constitution of the Commonwealth of Puerto Rico and the injuries suffered could be addressed as private individuals under Article 1802 and 1803 of the Puerto Rico Civil Code.  As such, the defendant, United States of America is considered to have waived immunity in this tort case wherein private individuals are held liable for such conduct under state law for which the suit would not be barred by any provision of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2674(b).  (Docket No. 1).

On March 6, 2009, defendant the United States of America filed a "Motion to Dismiss and Memorandum in Support" claiming plaintiff Bonilla-Olmedo's claims under the FTCA should be dismissed inasmuch as plaintiff is not entitled to a cause of action against defendant.  The United States submits the claim is barred by the Nonappropriated Fund Instrumentalities Act, the Longshoremen and harbor Workers Compensation Act as well as the FTCA.  It is further claimed the complaint is time barred by the applicable statute of limitations.  (Docket No. 17).

On April 13, 2009, plaintiff Bonilla-Olmedo filed a response in Opposition to Motion to Dismiss.  (Docket No. 20).  On April 14, 2009, defendant filed a Reply to Response. (Docket No. 23).  On June 19, 2009, a Memorandum in Support and Supplement of Motion to Dismiss were filed.  (Docket No. 31).  A Memorandum in Opposition appears on same date.  (Docket No. 32).

On September 14, 2009, the parties consented to jurisdiction by this United States Magistrate Judge at the Status Conference which was held.  (Docket Nos. 36 and 38).

## MOTION TO DISMISS STANDARD

A defendant may move to dismiss an action against him, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In assessing this motion, we "accept all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [plaintiff]." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). However, mere legal conclusions "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. ____, 129 S.Ct. 1937, 1950 (2009).  The complaint must demonstrate "a plausible entitlement to relief" by alleging facts that directly or inferentially support each material element of some legal claim. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 559) (internal quotation marks omitted).

## LEGAL ANALYSIS

Under the FTCA, the United States waives its sovereign immunity for "injury or loss of property ... caused by the negligent act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b). The FTCA provides the exclusive remedy to compensate for a federal employee's tortious acts committed within

his/ her scope of employment. *See* 28 U.S.C. § 2679(a).  Such a remedy lies only against the United States for actions by its employees and is exclusive of any other civil action.

Congress authorized a limited waiver of sovereign immunity when federal employees commit torts while acting within the scope of their employment.   28 U.S.C. § 2675(a). A district court lacks  jurisdiction over an FTCA action if the plaintiff has not complied with the notice requirements of Section 2675(a).

Accordingly, a tort action against the United States must be cognizable in accordance with the law of the place or local law. McCollum v. Bolger, 794 F.2d 602, 608 (11th Cir. 1986). However, federal constitutional torts are not included within the law of the place, since local law and federal law by definition and terminology are different.

This waiver of immunity is subject to numerous conditions, including: (1) the presentation of a claim for a sum certain within two years of accrual of the cause of action to the appropriate federal agency and denial of the claim before bringing suit, *see* 28 U.S.C. § 2675(a); and (2) the filing of a civil suit within six months of denial of the administrative claim**,** *see* 28 U.S.C. § 2401(b).

Throughout the FTCA, the meaning of a legal term is what Congress intended and is not dependent on state law. *See* United States v. Neustadt, 366 U.S. 696, 705-06 (1961) (whether or not this analysis [of misrepresentation] accords with the law of States which have seen fit to allow recovery under analogous circumstances, it does not meet the question of whether this claim is outside the intended scope of the FTCA, which depends solely upon what Congress meant by the language it used in  2680(h)); Molzof v. United States, 502 U.S. 301, 305 (1992) (interpreting punitive damages language of 28 U.S.C. §

2674) (the definition of a term used in the FTCA is by definition a federal question).  *See* Paul F. Figley, *Understanding the Federal Tort Claims Act: A Different Methaphor*, 44 Tort Trial & Ins. Prac. L.J. 1105 (2009).

We shall now examine hereinbelow the several grounds for dismissal submitted by defendant.

**A.    The FTCA Bars Harassment as Constitutional Tort and claims for Damages under a State Constitution.**

In defendant's argument as to the limited waiver of sovereign immunity provided by the FTCA, the United States would not be subject for liability as to violations of the Constitution of the Commonwealth of Puerto Rico for actions of its employees acting in their official capacity.  More so when the United States has not even waived sovereign immunity for suits alleging violations of the United States Constitution.

We need not reach this constitutional issue since the plaintiff's action is not a constitutional tort as such but rather a vehicle whereby the Puerto Rico Constitution allows for the provisions of Article 1802 to be asserted.[1]

The Puerto Rico Supreme Court has specifically held that the constitutional rights to dignity and privacy as they appear in Art. II secs. 1 and 8 of the Bill of Rights of the Puerto Rico Constitution operate *ex proprio vigore* and, therefore, may be asserted against private parties via a claim sounding in tort pursuant to the provisions of Art. 1802 of the P.R. Civil Code, P.R. Laws Ann. tit. 31 § 5141 (1990); *see* Vega-Rodríguez v. Telefónica de

---

[1] In County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223 (1979) it was determined that federal courts have a duty to avoid constitutional issues that need not be resolved in order to determine rights of parties before them.

P.R., 156 D.P.R. 584, 600, 2002 WL 723309 (2002); <u>Soc. Legal de Gananciales v. Royal Bank de P.R.</u>, 145 D.P.R. 178, 2002 (1998); <u>Arroyo v. Rattan Specialties, Inc.</u>, 117 D.P.R. 35 (1986).

Due to their peculiar nature by way of exception, private parties are liable for violations to dignity and privacy protections of their employees under local Commonwealth Constitution. The Puerto Rico Supreme Court distinguished coverage under these particular constitutional rights which operate *ex proprio vigore* from those that do require state action such as due process, freedom of speech and protection against unreasonable searches and seizures which mandate government intervention. Hence, these last provisions are not available *vis a vis* private parties and may only be asserted against government entities. <u>Vega-Rodríguez v. Telefónica de P.R.</u>, 156 D.P.R. at 613; <u>Rosario v. United States</u>, 538 F.Supp.2d 480 (D. Puerto Rico 2008)(claims for alleged violations to dignity and privacy protections under the Puerto Rico constitution translate into suits amenable to FTCA liability).[2]

Plaintiff's entitlement to a tort action as to defendant does not depend directly on state constitutional interpretation, rather on its availability under Article 1802 of the Puerto Rico Civil Code as discussed below.

**B.      Tort Liability Arises under Article 1802 of the Puerto Rico Civil Code for Harassment and/or Discrimination in Employment.**

The United States recognizes it is the law of Puerto Rico the one to define the standard of fault and recovery. However, in seeking dismissal of plaintiff's claims under the

---

[2] <u>Soc. Legal de Gananciales v. Royal Bank de P.R.</u>, 145 D.P.R. 178, 202 (1998); <u>Arroyo v. Rattan Specialties, Inc.</u>, 117 D.P.R. at 64.

state civil tort provisions of Article 1802, defendant submits workplace harassment does not constitute a cause of action thereunder but rather more typical of employment discrimination for which herein plaintiff should have sued the head of the agency and exhaust administrative remedies under 42 U.S.C. Sec. 2000e-16.[3] Defendant's position as to state law does not pass muster.

The FTCA waives the sovereign immunity of the United States for the tortious acts of its employees only where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  28 U.S.C.A. § 1346(b). Thus, a tort action against the United States must be cognizable in accordance with the law of the place or local law. McCollum v. Bolger, 794 F.2d at 608.

In assessing the case before us, we should not lose sight of the fact the herein plaintiff is not a federal employee but rather the relative and/or heir of the deceased employee, Mr. Merriweather, who is suing for her patrimony on the damages suffered by the deceased, as well as for her own pain and suffering.

The Puerto Rico Civil Code Article 1802 provides that a person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity. Civil Code Sec. 1802  (31 L.P.R.A. § 5141).

In Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1 (1994), the Puerto Rico Supreme Court determined that relatives of a person forced by his employer to resign because of

---

[3] Defendant refers that in Brown v. General Services Administration  425 U.S. 820 (1976), the Supreme Court held that section 717 of Title VII provides the exclusive remedy for federal employees seeking to redress employment discrimination.

harassment and discrimination are entitled to their own cause of action under Puerto Rico

Civil Code Article 1802 to seek redress for the harm caused to them as a result of the

discriminatory treatment of their relative at his workplace.  It ruled therein that the rights

of the relatives, in cases as the one under our consideration, constitute an independent

standard that arises separately under Civil Code Article 1802, in keeping with the general

principles of extracontractual (tort) liability. It is to these principles and to this section that

we must resort to as the sources of law in order to elucidate the legal status of the worker's

relatives.  The Supreme Court stated its recognition to having  incorporated into its legal

system a recognized rule of modern Law, that has been broadly construed both in the civil

and Anglo-Saxon law traditions.[4] 6 F. Puig Peña, *Nueva Enciclopedia Jurídica* 108 (1954).

Thus, in <u>Reyes v. Heirs of Sánchez Soto</u>, 98 P.R.R. 299, 303 (1970), said Court

recognized that the Article 1802 concept of fault is infinitely embracing, as ample and

embracing as human conduct is.

Dealing in the instant federal case with the cause of action of the deceased relative

and/or heir, the Puerto Rico Supreme Court has repeatedly recognized that a person is

entitled to compensation for the sufferings, emotional distress or mental anguish

experienced as a consequence of the material or other damages caused directly to their

relatives. We have recognized the right of a person to receive compensation when his/her

spouse or other relative suffers harm *in the most diverse situations,* as for example, in cases

---

[4]  In a parallel thought, the Supreme Court mentioned that in  <u>Colón v. Romero Barceló</u>, 112 D.P.R. 573, 579
(1982), it had reiterated the above-quoted pronouncements and reemphasized that the concept of fault in the law of torts
is so infinitely broad that it includes any fault that causes harm or injury. In <u>Gierbolini v. Employers Fire Ins. Co.</u>, 104
D.P.R. 853, 860 (1976), it had pointed out that fault has a protean nature; it changes as the opinion of men changes
according to place and time factors.

Pedro J. Alfonso v. U.S. Army
Civil No. 09-1501(DRD)
Report and Recommendation
Page 9

of insults and racial discrimination.  *See*  Muriel v. Suazo, 72 P.R.R. 348 (1951).[5]  *See also*
Hernández v. Fournier, 80 P.R.R. 94, 97 (1957).

Relatives would have a cause of action under Article 1802 of the Puerto Rico Civil
Code if they could meet the three essential requirements for this action, namely: (1) the
relatives have allegedly suffered a compensable moral (emotional) harm; (2) the harm was
caused by the employer's discriminatory treatment of its employee, with whom the plaintiffs
are related through blood ties and ties of love and affection, in such a way that the impact
of the discriminatory treatment received affects them and causes them harm; and (3) the
employer committed a tortious act pursuant to the all-embracing definition given to
tortious acts in the Commonwealth jurisdiction.

Opposing herein defendant United States of America avers that plaintiff's claims
have raised a state constitutional tort from which, as a sovereign, it has not waived its
immunity.  However, in Bonilla v. Chardón, 18 P.R. Offic. Trans. 696 (1987), the Supreme
Court of Puerto Rico indicated that Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A.
§ 5141, generally rules redress for a wrongful act, even when the wrongful act clashes
against the interests or rights guaranteed by the Constitution or by civil rights legislation.
As such, regardless of the state constitution, the acts attributed to the defendant may well
be encompassed by said Article 1802.

---

[5] Muriel v. Suazo, 72 P.R.R. at 349 recognized the existence in Puerto Rico of a cause of action for damages (tort)
for racial discrimination under the Civil Rights Act of Puerto Rico.

Pedro J. Alfonso v. U.S. Army
Civil No. 09-1501(DRD)
Report and Recommendation
Page 10

## C.  Non-Appropriated Fund Instrumentalities Act and Longshoremen and Harbor Workers' Compensation Act Preclude this Claim.

Defendant also submits that deceased Mr. Merriweather, being an employee of the Department of Morale, Welfare and Recreation Non-appropriated Fund whose reasons to sue and cause of death are attributed to a pattern of workplace harassment, is barred by the exclusive remedy provisions of federal statutes cited above.

Defendant United States submits that Mr. Merriweather and his spouse or next of kin, as an employee of a nonappropriated fund entity, should have sought instead compensation under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), as the exclusive remedy which provides for compensation for work-related death or disability. [6]

Pursuant to 5 U.S.C.A. §8171(a), employees of nonappropriated fund instrumentalities as described by 5 U.S.C.A. §2105(c) are entitled to compensation for death or disability under the Longshoremen's Harbor Act, which Section 8173 portraits to make the liability incurred thereunder as exclusive.[7]

"Nonappropriated fund instrumentalities" include, for example, the Navy exchanges, clubs, and the Navy's "Ships Stores Ashore". 5 U.S.C. § 2105(c). Employees of nonappropriated fund instrumentalities are specifically excluded from coverage under the

---

[6] A nonappropriated fund instrumentality is one that is not funded by congressional appropriation. 5 U.S.C.A. §2105(c).

[7] … [t]his liability is exclusive and instead of all other liability of the United States or the instrumentality to the [employee's] *legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the disability or death* in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. 5 U.S.C. § 8173 (1988) (emphasis added).

FECA, 5 U.S.C. § 2105(c), (known as "Federal Employees Compensation Act") and certain other laws administered by the Civil Service System. *See* Johnson v. United States, 600 F.2d 1218, 1221 (6th Cir. 1979). Instead, the Nonappropriated Fund Instrumentalities Act (referred to as "NFIA") provides that these employees are covered by the worker compensation scheme in the LHWCA. 5 U.S.C. § 8171. Still, the LHWCA, unlike the FECA, provides that the employer, and not the United States, is liable for compensation of injured employees. 33 U.S.C. § 904; Johnson, 600 F.2d at 1221.

Former provisions of 33 U.S.C.A. §901 are discussed below under the LHWCA as provided in 5 U.S.C.A. §8173, wherein the liability of the United States or of a nonappropriated fund instrumentality for disability or death resulting from injury is further described.

The liability of the United States or of a nonappropriated fund instrumentality described by section 2105(c) of this title, with respect to the disability or death resulting from injury, as defined by section 2(2) of the LHWCA (33 U.S.C. 902(2)), of an employee referred to by sections 8171 and 8172 of said title, shall be determined as provided therein. This liability is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the disability or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

The provisions for death or injury describe with particularity which "death" or "disability" are covered. 33 U.S.C.A. §902 (2), (10), (11).  It is plaintiff's position that the exclusive remedy should not apply because the injury referred to in the complaint does not arise out of Mr. Merriweather's employment with the agency.

By analogy to the LHWCA, the remedies provided by the Federal Compensation Act are exclusive and instead of all other liability of the United States ... in a civil action ... or under a Federal tort liability statute. 5 U.S.C. § 8173. If the Compensation Act applies to a particular injury, a tort action against the United States regarding those same injuries is preempted and as such the courts lack jurisdiction to hear the case. *See* <u>Southwest Marine, Inc. v. Gizoni</u>, 502 U.S. 81, 90, 112 S.Ct. 486 (1991)   As noted by the Supreme Court, the Compensation Act's exclusivity provision was designed to protect the Government from suits under statutes, such as the FTCA, that had been enacted to waive the Government's sovereign immunity. <u>Lockheed Aircraft Corp. v. United States</u>, 460 U.S. 190, 193-94, 103 S.Ct. 1033 (1983).

However, where substantial question regarding FECA coverage exists in action brought under the FTCA, requiring the Secretary of Labor to make a decision as to the Compensation Act coverage, abatement, rather than dismissal, of the FTCA action is the appropriate course of action, in order to avoid running of FTCA's limitations period. *See*

<u>Farley v. United States</u>, 162 F.3d 613 (10th Cir. 1998); <u>Tarver v. United States</u>, 25 F.3d 900 (10th Cr. 1994) (court stays proceeding pending final decision of the Secretary of Labor regarding coverage).[8]

Additionally, <u>Vilanova v. United States,</u> 851 F.2d 1 (1st Cir. 1988) determined application for benefits under LHWCA did not estop employee from bringing an FTCA suit, since until coverage has been determined by judicial or administrative decision, acceptance of LHWCA compensation paid voluntarily by employer or employer's insurance carrier would not a bar to suit under the FTCA. Longshoremen and Harbor Workers' Compensation Act, § 1 *et seq*., 33 U.S.C.A. § 901 *et seq*.; 28 U.S.C.A. §§ 1346(b), 2671 *et seq*.

The Supreme Court has observed the LHWCA is a humanitarian act and "must be liberally construed in conformance with its purpose, and in a way which voids harsh and incongruous results. <u>Veris v. Acaule</u>, 346 U.S. 328, 333, 74 S.Ct. 88, 92 (1953). Thus, holding in abatement a FTCA suit until the Secretary of Labor determines coverage by the LHWCA would protect both plaintiff's federal action as the purpose of the LHWCA provisions.

Likewise, coupled with some penalty provisions under the LHWCA relating to late payment of benefits, recipient's claim of a nonappropriate fund instrumentality against an administrator of self-insurance fund maintained by employer for bad faith handling of claim and intentional infliction of emotional distress, absent outrageous, reprehensible or

---

[8] <u>Wreath v. United States</u>, 897 F.Supp. 517 (D. Kan. 1995) (when a substantial question is presented to the Secretary of Labor and/or no final determination as to injury compensable under the LHWCA has been issued, it is deem appropriate to stay the federal claim pending a final decision on LHWCA claim). *See* <u>Wilder v. United States</u>, 873 F.2d 285 (11th Cir. 1989).

particularly egregious conduct.  33   U.S.C.A. §§914 *et seq.*, 5 U.S.C.A. §8173.  Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under §§ 907, 908 and 909 ... irrespective of fault as a cause for the injury.  33 U.S.C.A. §904.

However, once settlement of LHWCA compensation is received, it will estop employee from contesting Department of Labor's finding, made in approving settlement, that his injuries were compensable under LHWCA; and because his injuries had been found to be compensable under LHWCA, employee's FTCA suit would be barred by exclusive remedy provision of Nonappropriated Fund Instrumentalities Act. Vilanova, 851 F.2d at 7.

The provisions for death or injury describe with particularity which "death" or "disability" are covered. 33 U.S.C.A. §902 (2), (10), (11).  It is plaintiff's opposition the exclusive remedy should not apply because the injury referred to in the complaint does not arise out of Mr. Merriweather's employment with the agency.

We note that nowhere in the government's motion to dismiss for the deceased being employed by a nonappropriated fund agency does it state the supervisors have filed the corresponding reports of the deceased injuries or death with the Department of Labor or with the corresponding insurer that would trigger compensation under the LHWCA.[9]  In fact, plaintiff Bonilla-Olmedo's complaint submits having been denied access to documentation of any grievance or record of Mr. Merriweather and having been ousted from the facilities of Fort Buchanan thereafter.

---

[9] Compensation payments under the LHWCA are automatically triggered by a report of injury by the employer, unless the employer controverts liability.  33 U.S.C.A. §914(a).

Furthermore, defendant's motion to dismiss also indicates the cause of death of Mr. Merriweather was not job related since the medical report shows having died of liver cancer and renal insufficiency, seemly denying at first glance liability for employment related injuries. Defendant cannot benefit at this juncture by providing grounds for dismissal made unavailable to plaintiff's relief for recovery under any viable theory, including LHWCA coverage, without further consideration.[10] If anything, once the issues are submitted to the Department of Labor, the herein federal lawsuit may be stayed or abated pending resolution. Thus, only a finding that the injuries or death are compensable under the LHWCA, would govern whether the FTCA suit would be barred. *See* Vilanova (acceptance of LHWCA benefits paid voluntarily does not bar suit under the FTCA, but a settlement approved by the Labor Department amounts to collateral estoppel). 4 Arthur Larson, *The Law of Workmen's Compensation* §90.50-51(c)(1993) (concluding that an administrative approval of benefits should only be *res judicata* where the eligibility issue was actually litigated). *See also* Kinder v. Crawford and Co., 962 F.Supp. 10 (D. Puerto Rico 1997) (given the Department of Labor had determined plaintiff's injuries were compensable under the LHWCA, plaintiff's exclusive remedy is under that Act). *See* B.S. Costello, Inc., v. Meagher, 867 F.2d 722, 724 (1st Cir.1989); Reichert v. Chemical Carriers, Inc., 794 F.2d 1557, 1559 (11th Cir. 1986) (an employer which provides compensation coverage may not be sued, but one which does not provide coverage may be sued).

---

[10]  The fundamental purpose of the LHWCA is to provide employees with a practical and expeditious remedy.

Pedro J. Alfonso v. U.S. Army
Civil No. 09-1501(DRD)
Report and Recommendation
Page 16

As such, the exclusivity of the remedies under the LHWCA is not ripe for adjudication nor is supported by defendant's averments in the motion to dismiss.

**D.    The Claim is Time Barred.**

Finally, defendant submits the complaint should be time barred since the pattern of harassment claimed as to Mr. Merriweather commenced on July 2005 and continued until August 14, 2007. Also, the administrative complaint filed by Mr. Merriweather on October 2, 2007 exceeds the two years time limitation of the FTCA counting from the date he first became subject of harassment and intimidation, that is, July 2005.  The United States recognizes it would be liable under circumstance where a private person would be liable pursuant to the law of the place where the acts or omissions occurred, which is the law of Puerto Rico in this case.  However, the United States disregards the fact that the demise of Mr. Merriweather took place thereafter, on August 14, 2007, yet as alleged by defendant it is but a final consequence of the alleged harassment pattern and solely a final or full extent of damages initiated and known long before.

The FTCA's limitation provisions clearly provide for the terms of its time limitations of two years.  However, it has been construed that equitable tolling defenses may be applicable to FTCA.  Rakes v. United States, 442 F.3d 7, 25 (1st Cir. 2006) (availability of duress to toll FTCA's statute of limitations).[11]

Plaintiff Bonilla-Olmedo has claimed a continuing violation ensued in this case. The continuing violation doctrine creates an equitable exception when the unlawful behavior

---

[11] Pérez v. United States, 167 F.3d 913 (5th Cir. 1999) (FTCA is subject to equitable tolling when defendant failed to furnish plaintiff with forms).

is deemed ongoing.  *See* <u>Provencher v. CVS Pharmacy, Div. of Melville Corp.</u>, 145 F.3d 5, 14 (1st Cir. 1998). Where the violation is of a continuing nature, the charge of discrimination filed may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the violation or within the statutory period. <u>Pilgrim v. Trustees of Tufts College</u>, 118 F.3d 864, 868 (1st Cir. 1997);  <u>Rivera-Rodríguez v. Frito Lay Snacks Caribbean</u>, 265 F.3d 15, 21 (1st Cir. 2001); *see also* <u>Hernandez-Payero v. Puerto Rico</u>, 493 F.Supp.2d 215 (D. Puerto Rico 2007).  The general rule is that statutes of limitation are subject to equitable tolling.  <u>United States v. Locke</u>, 471 U.S. 84, 94 n.10, 105 S.Ct. 1785 (1985).  The same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the <u>United States.  Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 95-96, 111 S.Ct. 453 (1990).

In those instances where the violation alleged to have caused the harm can easily be referred to a single incident, not to a continuous chain of tortious activity, the Court then referred to herein defendant's averment that plaintiff would be claiming the ill effect of an initial wrong and not a continuing tort for purposes of determining when the statute of limitation starts to run.  Such would be clear when facing a false arrest claim or a malpractice situation.

The complaint filed in this case refers to a pattern of harassment which commenced on July 2005 and continued uninterruptedly until August 14, 2007. *Complaint ¶8*. The pattern referred to constant reprimands of Mr. Merriweather by his superiors Freddie Giddens, Earl Goins and Mr. Fass. *Id. ¶9*. Mr. Freddie Giddens would use official vehicles and employees for personal matters and would force Mr. Merriweather, an employee, to

lend him money, pick him up at his house in Gurabo, insinuating that if he complained or sought to collect the monies lent there would be repercussions.  *Id. ¶10.*  Mr. Giddens would call Mr. Merriweather a nigger and would demean him in front of other employees by calling them  incompetents and thieves.  He moved Mr. Merriweather from his regular duties to perform duties requiring excessive physical work for which he would not be fit so as to cause Mr. Merriweather's performance to decrease and give him bad evaluations at work.  *Complaint ¶12.*    A sworn declaration was taken from Mr. Merriweather on November 29, 2006 by supervising personnel at the Buchanan Army Base but no corrective action was taken.  *Id. ¶16.*  The supervising personnel knew from other statements that work environment of sexual innuendos, encounters and indiscipline was deeply troubling Mr. Merriweather and other employees but nothing was done.  *Id. ¶17.*  Upon Mr. Merriweather's death, on August 14, 2007, his widow and two grandchildren sought to continue their status as residents in the Buchanan Army Base but were met by numerous obstacles none of which had been experimented by other widows therein.  *Complaint ¶18.* Upon learning her deceased husband had initiated legal grievance with the EEOC at the Buchanan Army Base, plaintiff Bonilla-Olmedo tried to inquire about these procedures but was treated in a hostile manner, was denied access to the records of her husband's complaints.  *Id. ¶19.*  Ms. Bonilla-Olmedo and the grandchildren were ousted from the Army installation and their privileges and access terminated.  *Id. ¶20.*

Thus, taking as true the allegations of the complaint in the instant case, there are several contentions as to discriminatory acts, both as to work and racial harassment during an extensive time period, which continued, as claimed, after the demise of Mr.

Pedro J. Alfonso v. U.S. Army
Civil No. 09-1501(DRD)
Report and Recommendation
Page 19

Merriweather towards plaintiff Bonilla-Olmeda. For this reason, the complaint refers not

to a single act of discrimination with continuing consequences but to a series of continuous

violations.[12]

Accordingly, a perusal of the claims presented, as well as defendant's submission,

establish that defendant's motion to dismiss for  the complaint being time barred is not

appropriate at this juncture.

## CONCLUSION

In light of the above discussed, defendant United States of America' "Motion to

Dismiss for Lack of Jurisdiction"  (Docket No. 17) is **DENIED.**

In San Juan, Puerto Rico, this 12th day of November of 2009.


s/**CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**

---

[12] Kassaye v. Bryant College, 999 F.2d 203 (1st Cir. 1993) (serial continuing employment discrimination violation which may toll running of statute of limitation is described as a number of discriminatory acts emanating from same discriminatory animus, each act constituting a separate wrong).